McClanahan *et al. v.* O'Donnell *et al.*[*]

(Division A.   Oct. 10, 1927.   Suggestion of Error Overruled Nov. 21, 1927.)

[114 So. 336.   No. 26389.]

1. APPEAL AND ERROR.   *Chancellor's finding that appellee committed, no fraud or collusion to prevent perfecting record must be sustained.*

Finding of chancellor on question of fact, that appellee did not by fraud or collusion prevent appellants from perfecting record for appeal, must be sustained.

2. APPEAL AND ERROR.   *Appeal is solely statutory right, and, in absence of fraud or fault of opposing litigant, party desiring appeal must pursue statutory method.*

An appeal is solely a statutory right, and, in the absence of fraud or fault on the part of the opposing litigant to secure judgment or decree in his favor, party desiring to appeal therefrom must assume remedy by statute.

3. EQUITY.   *Appellant held not entitled to have final decree set aside and a rehearing, because of inability to complete record after stenographer absconded without filing transcript (Hemingway's Code 1927, sections 594, 599).*

Since legislature, under Hemingway's Code 1927, section 599, and Code 1906, section 796 (Hemingway's Code, section 594), has provided a plain and direct remedy for appellant in case of death of

stenographer before filing copy of notes, or in case of failure
to do so, and also for securing bill of exceptions in case of death,
resignation, or incapacity of trial judge, remedy provided therein
must be pursued by one desiring to appeal from an adverse rul-
ing or decision, and appellants were not entitled to have orig-
inal decree vacated and rehearing on ground that they were
unable to prepare statement of evidence after the stenographer,
who had taken greater part of evidence, absconded without filing

*Corpus Juris-Cyc. References: Appeal and Error, 3CJ, p. 316, n. 43;
p. 1039, n. 2; 4CJ, p. 898, n. 92; Equity, 21CJ, p. 716, n. 93 New.

Appeal from chancery court of Forrest county.
Hon. T. P. Dale, Chancellor.

Suit by Charles McClanahan and others against T. L.
O'Donnell and others. From a decree dismissing a pe-
tition to set aside and vacate a final decree thereinbefore
entered, complainants appeal. Affirmed.

*R. L. Bullard,* for appellant.

The lower court erred in denying the rehearing: (1)
In refusing to consider the statements of Rhodes tend-
ing to explain his corrupt conduct; and (2) in holding
that appellants are not entitled to a rehearing because
of their inability to have the evidence made part of the
record.

Collusion, which is another name for conspiracy, is to
be proved by all the facts and circumstances tending to
show it. In this the widest latitude is always allowed.
It is somewhat like the proof of mental soundness. Every
fact in relation of the parties to each other, including
what each said, whether in the presence of each other or
not, is to be looked to. Generally, it can be proved in
no other way. Of course, the combination must be
proved before either can be held liable for the statement
of the other, but such combination is to be proved by
their statements in connection with all the other facts.

Whether the statements of Rhodes were admissible as evidence of collusion or not, they were still admissible to characterize the conduct of Rhodes and show that the efforts of appellant to complete the record were impossible. On either theory it was error to exclude them.

*The impossibility of completing the record.* Appellants are entitled to a rehearing regardless of whether O'Donnell was at fault or not. It is the application of the principle of justice which gives an unsuccessful suitor a new trial where without fault of his, he is denied his right to appeal. That principle seems to be of universal application. Heretofore, it could rarely, if ever, occur in equity because heretofore the record, evidence and all, was complete at the time of the trial and there was nothing left but for the looser to take the record, which already existed complete, to the appellate court.

The only condition is that the complaining party was diligent and without laches. Diligence of appellant was not questioned, except that they say he should have prepared a bill of exceptions and presented it to the chancellor within forty days after the time expired. This was not compulsory and was impossible. It would not have been impossible if appellee would have cooperated. Perhaps he was not under any duty to do so, but in face of his admitted refusal to do "anything whatever about it," it hardly lies in his mouth to visit on us the consequences of the impossibility his refusal made certain.

The statute applicable to both courts, with all its incidents, is chapter 145, Laws of 1920. The power to grant new trials is inherent in courts of general jurisdiction and refusal to exercise it when necessary to the ends of justice is error. For causes occurring before, or during the term, it must usually be applied for at the term which rendered the judgment. But for cause which arose after the term it is only necessary that the application be made without inexcusable delay; usually, but not always, at the next term. 29 Cyc. 722; 29 Cyc. 723, 930.

· In this state the power of courts of general jurisdiction and the practice as to new trials is left as at common law except for section 800, Code of 1906. This section recognizes the inherent power of the court in all its fullness, but limits its exercise to two new trials in any case.

Opposing counsel say that they are under no obligation to try to agree on a bill of exceptions. In this they were in error. The contrary is held. The case of *Evans* v. *Humphreys,* 9 App. Cas. (D. C.) 392, is cited as authority for the proposition that a new trial will be awarded "where parties could not agree on a bill of exceptions and the court was unable to settle same."

The opinion of the United States supreme court in the case of *Malony* v. *Adsit,* 175 U. S. 281, 44 L. Ed. 163, throws much light on the proposition. See, also, *Barrowcastle* v. *Bosworth,* 98 Mass. 34.

It cannot be contended that appellant has not been deprived of a remedy which the law gives them that they made persistent effort to pursue in vain. When the necessity arose after the term, the application could not be made until it did arise and if the cause of it was the inability of the court to complete the record that he had, after the term, authority to complete, of course, it cannot be said that the record was still under the control of the court. There is too much authority on this for it to be an open question. *Matthews* v. *Mulford,* 73 N. W. 661 (Neb.); *Holland* v. *Chicago, etc., R. R. Co.,* 71 N. W. 789; *Owens* v. *Paxton,* 11 S. E. 375; *Curran* v. *Wilcox,* 6 N. W. 762.

These appellants lost their right to appeal by the wilful and corrupt failure of an officer of the court to do his duty. They could not, dared not, perfect their appeal and bring the case to this court without the evidence. The decree would have been affirmed as of course. They were deprived of this right by the wilful failure of the court's officer in spite of all we could do. There is but one remedy for the injustice.

148 Miss.—31.

*R. W. Cassedy* and *Stevens & Heidelberg,* for appellee.

A final decree on the trial of this cause was rendered by the chancellor on October 2, 1925, in defendant's favor.

Appellant not having appealed from this final decree and the right of appeal now being barred, he would have no right upon which to base a motion for a new trial on account of not being able to get a copy of the evidence taken by Stenographer Rhodes. See section 2476, Hemingway's Code (section 3112, Code of 1906). This section provides the time in which an appeal must be prosecuted; and if the party to such judgment or decree fails to prosecute such appeal, within such time, the right to such an appeal has been forever lost.

Section 24, Hemingway's Code (section 48, Code of 1906) provides that an appeal may be granted by the court in term time. Section 25, Hemingway's Code (section 49, Code of 1906) provides for the condition upon which an appeal will be granted in civil cases. This section makes it a condition precedent to an appeal without *supersedeas* that a bond be executed as provided for in said statute.

It will be seen from the reading of these several statutes that under the procedure therein provided for, it is required that an appeal be prosecuted within twelve months from the date of the judgment or decree, that the execution and filing of the appeal bond is made a condition precedent to the right of appeal, and the date of such filing of such bond is by said statute made the date or time of the taking of such appeal.

In this case, the final decree was rendered by the chancellor on October 2, 1925. No appeal bond has even been filed in this case, unless the appeal bond filed by appellant in prosecuting an appeal from the decision of the chancellor on appellant's petition for a new trial be treated as an appeal bond sufficient to stop the running of the statute of limitations against a right of appeal from the final decree on the merits of this cause. This appeal

bond was filed on October 7, 1926, same being more than twelve months after the rendition of the final decree.

Appellant's petition for a rehearing or for a new trial, seems to be bottomed on a complaint that the stenographer, Joe Rhodes, did not transcribe his notes of the testimony at the trial.

The rules and regulations, procedure and statutes regulating and providing for the transcript of evidence taken by a stenographer during the course of a trial, either in the circuit or chancery court, are statutes, rules, regulations and procedure to aid a person or party appealing to perfect the record of a cause on such appeal. Therefore, before any such party or person would be or could be in anywise interested in such testimony being transcribed, filed and made a part of the record, he would have to be or ought to be a person or party appealing.

In this case no bond having been executed and filed within the twelve month period provided for by statute, and no such deposit having been made, the appellant's right to an appeal has been forfeited; and if his right to an appeal has been forfeited, appellant could not be injured or hurt in any manner on account of the failure, refusal or neglect on the part of the stenographer to transcribe his notes of the evidence taken during the trial.

There is not such thing as an appeal until a bond and deposit on bonds has been filed. The appellee, therefore, would submit that in any view of the record in this case, the decree of the chancellor denying a new trial on the petition herein, was correct and should be affirmed. Mississippi Chancery Practice by Judge V. A. Griffith, section 685, sets out the statute on appeals and cites *Turner* v. *Simms,* 99 Miss. 29, 54 So. 658; *Perkins* v. *State,* 129 Miss. 488, 91 So. 704.

If the appellants were entitled to any remedy at all, they should have prosecuted the appeal and filed a motion in the supreme court, the entire complaint being

based upon an ancillary matter to make the appeal effectual.

We find two cases in our report where new trials were sought on account of the inability of the appellant to secure a complete transcript of the record of his cause. See *Quarles* v. *Hiern,* 70 Miss. 259; *Germaine* v. *Hartwell et al.,* 61 So. 659. See, also, Griffith's Chancery Practice, section 633, citing *Cotten* v. *McGehee,* 54 Miss. 622; *Wiggle* v. *Owen,* 45 Miss. 691.

If it be true as shown by the authorities above cited that the decree rendered in this cause was final, and the chancery court had no further jurisdiction over it, then it necessarily follows that any right to a new trail which parties litigant may have on account of the action or conduct of any person making it impossible for the appellant to secure a proper record on appeal must be vested in the supreme court. And the supreme court could have no jurisdiction in the matter until such appeal was prosecuted, this being the remedy pursued in the two Mississippi cases above cited.

In a petition for a bill of review there must be attached to the petition a copy of the bill of review which the party proposes to file. See Griffith's Miss. Ch. Pr., section 640, and authorities there cited. In the instant case no copy of the proposed bill of review was filed.

It is manifest that only persons appealing from a final judgment or decree are entitled to have a correct transcript of the record of the original trial of the case; and if the trial court should be required to set its final judgment or decree aside, on the simple showing that a portion of the record had been destroyed and would not be available on an appeal without the applicant having first as a condition precedent actually prosecuted his appeal, then such court would be required by such rule to do what in its opinion would be a great injustice to the successful party, for no reason whatsoever, because the only reason claimed by appellant or ever assigned in any reported case for granting new trials in such cases

is that the right of appeal or to make such appeal effective would otherwise be lost.

We submit that the chancellor's opinion and decree in disposing of appellant's petition should be affirmed on this ground.

Cook, J., delivered the opinion of the court.

The appellants Charles McClanahan and many others, as beneficiaries under the last will and testament of Butler McClanahan, deceased, filed a bill in the chancery court of Forrest county against the appellee T. L. O'Donnell and numerous corporations, in which it was alleged the said Butler McClanahan owned stock at the time of his death, and prayed for full discovery from each of said corporations as to the interest of the said deceased therein at the time of his death, and shortly prior thereto, the value of said interest, and the disposition that had been made thereof. As against the appellee T. L. O'Donnell, it was charged that, by fraud, breach of trust, and undue influence exercised at a time when the testator was mentally incapacitated to transact business, the said O'Donnell had acquired the legal title to, and was claiming the ownership of, all the property which the testator owned at the time of his death or for more than a year prior to his death. The averments of undue influence, fraud, and breach of trust were lengthy and specific; and the bill prayed that the said O'Donnell be compelled to make full and complete discovery in regard to all the matters set forth in the bill of complaint, giving an exact detail of all the transactions between himself and the deceased, McClanahan, listing all of the said property, its present value, its disposition and present whereabouts, and upon what basis the said O'Donnell and others claimed to be the owners thereof; and also prayed for a decree adjudging the appellants to be the owners of all this property, and for an accounting. The several defendants filed answers to the bill, making the discovery

prayed for, and the appellee O'Donnell also filed an answer denying in detail all the allegations of the bill as to undue influence, fraud, and breach of trust, and making a full and complete discovery as to all matters set forth in the bill of complaint.

The bill of complaint, as well as the answer of the appellee O'Donnell, was several times amended, and finally the cause came on for hearing before the chancellor on the bill, answers, and oral and documentary proof. There were many witnesses offered by both the complaint and defendants; and the stenographer's notes of the testimony of these witnesses were taken down by Mrs. Sarah Dale Hathorn and Joe Rhodes, stenographers. Mrs. Hathorn, who was the official stenographer of the said chancery court, took the testimony of only two of these witnesses, while, for some reason not disclosed by this record, the remainder of the testimony was taken by the said Joe Rhodes, as stenographer *pro tempore.* After a full hearing of the cause, on the second day of October, 1925, the chancellor granted a decree denying all the relief prayed for and dismissing the bill of complaint.

The stenographic notes of that portion of the testimony taken by Joe Rhodes, stenographer *pro tempore,* were not filed within the time allowed by law, and on April 1, 1926, long after the time allowed by law for filing any bill of exceptions the appellants filed in the court below a petition for rehearing, alleging, in substance, that when the trial started the testimony of the first two or three witnesses were taken down by the official stenographer; that she was then succeeded by Joe Rhodes as stenographer *pro tempore,* who took all the remainder of the testimony.; that the evidence taken by him was very voluminous, a large number of witnesses being introduced by both the complainants and the defendants; that appellants' attorneys had no means other than the stenographic notes to know or remember the names and the tes-

timony of these witnesses; that no notes of the evidence were kept by the court, or under its direction, other than the stenographic notes; that there was no evidence to sustain the good faith of the conveyances to O'Donnell, but, on the contrary , the evidence showed circumstances of the gravest suspicion of actual and active fraud; and that, if the evidence had been preserved in the record, it would have shown that it was wholly insufficient to uphold the findings of the court on this and other vital issues, so that, upon appeal, the decree would necessarily be reversed.

It was further alleged that the appellants were prevented from having the evidence made a part of the record by fraud and collusion occurring after the rendition of the decree; that within ten days after the rendition of said decree, the appellants served the said Rhodes with the required statutory notice to transcribe his notes of the evidence; that some time after this notice was served the said Rhodes requested the attorney for the appellants to advance his fee for transcribing said notes, which was done upon the representation by Rhodes that the transcript of such evidence was ready to be filed, with the exception of the copying of one exhibit which he did not then have in his possession, that the said notes would be filed on the following Saturday; that, upon learning later that said notes had not been filed, the said attorney made inquiry for said Rhodes and learned that he had absconded; that said attorney learned upon reliable information that the said Rhodes was in collusion with the appellee O'Donnell, who induced him to abscond without filing his notes; and that said attorney made diligent search for the stenographer Rhodes, but was unable to ascertain his address.

It was further alleged that the appellants' attorney made known to counsel representing the appellee the fact that the said Rhodes had absconded, and requested them to write the substance of their evidence which they desired to have incorporated in the record so that appel-

lants might prepare a fair bill of exceptions, but this appellee refused to do; that the appellants were able to prepare a fair statement of the substance of the evidence offered by them, but they were wholly unable to prepare a statement of the substance of the evidence for appellee; and it thus became, without any fault of the appellants, impossible to complete the record so that an appeal might be prosecuted.

The petition prayed the court to set aside and vacate the final decree in said cause, and to grant the appellants a rehearing, or that the petition be received and acted upon as a petition for leave to file a bill of review in said cause for matter occurring after the rendition of said decree. .

The appellee O'Donnell filed an answer to this petition specifically denying all the allegations of fraud or collusion between him and the defaulting stenographer, and denying that the petition presented any facts which would justify the court in setting aside the final decree granted in the cause. After a hearing of this petition and the evidence offered in support thereof, as well as the testi-mony of the appellee O'Donnell, the court rendered a decree specifically finding that the evidence wholly failed to establish that the appellee O'Donnell was guilty of any fraud or collusion with the stenographer, Joe Rhodes, and finding from the evidence that, as a matter of fact, said appellee was not guilty of any fraud or collusion, and had done nothing to prevent the appellants from perfecting the record for appeal to this court, and ordered the petition dismissed. From this decree the appellants prosecuted this appeal.

The petition of appellants in this case seeks to have the chancery court set aside a final decree rendered after a full hearing upon the pleadings and the evidence, and long after the adjournment of the term of court at which said decree was rendered, on the ground that the appellants were entitled to a bill of exceptions in order that the record of the trial of the entire cause might be reviewed by

this court on appeal, and since, through no fault of the appellants, they were unable to secure a transcript of the evidence or bill of exceptions, they were entitled to a rehearing or a new trial in order that the testimony might be retaken, and thereby their right of appeal, and a review of the entire record, be secured. The petition charges that the default of the stenographer was the result of fraud and collusion between him and the appellee, but, upon the proof offered to sustain this charge, the chancellor found that the appellee was guilty of no fraud or collusion with the stenographer, and that he had done nothing to prevent the appellants from perfecting the record for appeal to this court. Upon this question of fact we think the finding of the chancellor must be sustained, and we must consider the question presented by this appeal as one arising in a case where the failure or inability of the appellants to secure a transcript of the evidence or bill of exceptions is not due to any fraud or other fault of the appellee.

Chapter 111, Laws of 1910, section 797 (d) (section 599, Hemingway's 1927 Code), provides, among other things, that:

"In case a copy of the transcribed notes cannot be furnished, a bill of exceptions may be prepared within the time hereinafter stated, just as in cases where no stenographer takes down the evidence. . . . In case of the death of the stenographer before filing copy of his notes of the evidence in any case, or of his failure to file the same, after having been notified by appellant, within sixty days after notice to transcribe, or within any extended time, the party taking the appeal may, within forty days after the extended time, prepare and present to the judge a bill of exceptions in the case, as if there had not been a stenographer therein, and the judge shall examine, correct if necessary, and sign the same within the time prescribed, sixty or ninety days after the end of the term, or within the extended time aforesaid."

This section also provides a method of making the transcribed notes of the evidence a part of the record in the event of the death or incapacity of the trial judge, or of his refusal to approve and sign them, while section 796, Code of 1906 (section 594, Hemingway's 1927 Code), provides a method of securing a bill of exceptions in case the trial judge is prevented from signing it by reason of death, resignation, or other incapacity.

From an examination of these statutes it will be seen that the legislature has attempted to provide a method of supplying a bill of exceptions under all contingencies, and particularly in case of the death or default of the stenographer who took the notes of the evidence. An appeal is solely a statutory right, and, in the absence of fraud or fault on the part of the opposing litigant who has secured a judgment or decree in his favor, the party desiring to appeal therefrom must pursue the method and remedy provided by statute. We recognize the fact that it may often be difficult, and sometimes may be impossible, to supply a proper bill of exception where the stenographer's notes of the evidence cannot be secured on account of the death or default of the stenographer; but the legislature has provided a plain and direct remedy for such cases, and this is the remedy that must be pursued by one desiring to appeal from an adverse ruling or decision of the court, when the opposite party, who has acquired a valuable and vested right by the decision, is free of any fraud or fault that caused or contributed to the failure or inability of the dissatisfied party to secure a transcript of the evidence or perfect an appeal.

Upon the record now before use we are not called upon to pass upon the question of what, if any, rights the appellants would have had in the court below in the event it was established that the failure of the stenographer to file the stenographic notes of the evidence was due to the fault, or fraud of the appellee; or whether in such case the appellants could have availed of the remedy and

procedure which was approved and followed in this court in the cases of *Quarles* v. *Hiern,* 70 Miss. 259, 12 So. 145, and *Germaine* v. *Harwell,* 104 Miss. 679, 61 So. 659, where it was charged that the appellant was unable to complete the record, for the reason that the original papers had been either lost or destroyed while in the possession of the appellee. Upon these questions, we express no opinion.

The decree of the court below will therefore be affirmed.

*Affirmed.*